IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MARY SHEA BUCHANAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) ) Case No. 23-CV-236-DES |
| THE STATE OF OKLAHOMA, ex rel, THE STATE OF OKLAHOMA DEPARTMENT OF HUMAN SERVICES, an Oklahoma Political subdivision; DEBORAH SHROPSHIRE, in her official capacity; MISSY ST. CLAIR, in her official and individual capacities; CHARLIE ROSENBLUM, in his official and individual capacities; MATTHEW WOLLASTON, in his official and individual capacities; and HALI MCMILLEN, in her official and individual capacities, | ) ) ) ) ) ) ) ) ) ) ) ) |
| Defendants. | ) |

## OPINION AND ORDER

This matter comes before the Court on Defendants Missy St. Clair, Charlie Rosenblum, Matthew Wollaston, and Hali McMillen's (collectively "Defendants") and Defendants Oklahoma Department of Human Services ("OKDHS") and Deborah Shropshire in her official capacity's (collectively "OKDHS") Motions to Dismiss Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Docket Nos. 14 and 15). For the reasons set forth below, Defendants and OKDHS' Motions to Dismiss are hereby GRANTED.

I.   **Background**

Plaintiff's Complaint stems from an investigation and referral OKDHS received against Plaintiff on or about June 1, 2022, regarding a minor child known by the initials J.L. According to Plaintiff, a day after the referral was made, OKDHS instructed Plaintiff to arrive at Carter County OKDHS for an interview, the results of which would determine whether a forensic interview of

1

the minor child was necessary. Instead, Plaintiff alleges that she was not interviewed, and the minor child was taken from her for a nonnegotiable forensic interview after which the minor child was placed in the custody of the minor child's father. (Docket No. 13 at 3). Plaintiff alleges that she was not given time to consult with counsel regarding her rights and was only informed later that there had been an Emergency Custody Order granted in her divorce proceedings. *Id.* at 5. Plaintiff does not acknowledge that the Emergency Custody Order gave full custody of the minor child to her ex-husband but does allege that she began supervised visitation under the Order. *Id.* Plaintiff alleges that during these visitations she noted multiple times that the minor child had bruising and immediately notified OKDHS, with no response on many occasions. *Id.* On one instance of noting the bruising in August 2022, Plaintiff alleges that OKDHS conducted an interview with Plaintiff regarding her referral but "went well beyond her scope of employment and started questioning and investigating Plaintiff as though she was the alleged perpetrator[,]" failed to conduct a forensic interview of the minor child, and then unsubstantiated Plaintiff's allegations against the minor child's father. *Id.* Plaintiff alleges that she sent a letter to OKDHS Child Welfare Services Appeals Section regarding the minor child's continued bruising that, to her knowledge, OKDHS did not investigate. *Id.* On or about January 7, 2023, Plaintiff alleges that it was brought to her attention that the minor child may have been exposed to drugs and/or an individual who had recently been arrested for possession of drugs. *Id.* at 6. This led Plaintiff to "withhold[ ] the minor child" which caused OKDHS to receive a referral and conduct another investigation of Plaintiff. *Id.* Plaintiff alleges that despite the minor child being safe with her, Defendants St. Clair and McMillen sought to remove the minor child from Plaintiff and told Plaintiff she was to agree to a safety plan or have her minor child forcefully removed from her home. *Id.* at 7. Plaintiff further alleges Defendants St. Clair and Rosenblum have a personal relationship with the minor child's

father, and that such relationship led them to use their capacities with OKDHS to harass Plaintiff and treat her differently than they treated the minor child's father. *Id.* at 7-8. Finally, Plaintiff alleges Defendants St. Clair and Rosenblum "shared confidential information from each and every investigation against Plaintiff with the community." *Id.* at 8.

On June 1, 2023, Plaintiff filed her original Complaint in the District Court of Carter County against the Defendants and OKDHS alleging violations of Plaintiff's rights under the United States Constitution and Oklahoma state law. Based on the allegations in Plaintiff's Petition, the Defendants moved for removal from State Court to the Eastern District of Oklahoma. (Docket No. 2). On July 19, 2023, all Defendants filed their first Motion to Dismiss for Failure to State a Claim. (Docket Nos. 10 and 11). On August 8, 2023, Plaintiff filed an Amended Complaint. (Docket No. 13). The Amended Complaint added additional facts but kept Plaintiff's allegations of violations of the Fourth and Fourteenth Amendments, conspiracy, intentional infliction of emotional distress, libel and slander, and false light invasion of privacy while also seeking injunctive relief. *Id.* Despite the additional facts added to Plaintiff's "Statement of Facts," Defendants argue in their Motion to Dismiss that the allegations contained in Plaintiff's Amended Complaint fail to as a matter of law as they do not contain sufficient facts upon which the allegations can be based. (Docket No. 14). Furthermore, OKDHS argues that Plaintiff has failed to comply with the Governmental Tort Claims Act for her state law allegations, and that she is not entitled to injunctive relief. (Docket No. 15). For the reasons set forth below, the Court agrees.

**II.     Analysis**

Federal Rule of Civil Procedure 8(a)(2) provides that a complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. Courts would generally embrace a liberal construction of this pleading requirement and allow complaints containing only

conclusory allegations to move forward unless factual impossibility was apparent from the face of the pleadings. *Robbins v. Oklahoma,* 519 F.3d 1242, 1246 (10th Cir. 2008). However, the U.S. Supreme Court's decision in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), announced a new standard that held to withstand a motion to dismiss, a complaint must contain enough allegations of fact to state a claim in which relief is plausible on its face. *Id* at 570. This does not mean all facts must be presented at the time of the complaint, but merely that the complaint must "give the defendant fair notice of what the claim . . . is and the grounds upon which it rests." *Id.* at 555 (quotation omitted). Therefore, "if [allegations] are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs have not nudged their claims across the line from conceivable to plausible." *Robbins,* 519 F. 3d at 1247. Courts are to always construe the allegations of a complaint in a light most favorable to the plaintiff; however, "the [C]ourt will not read causes of action into the [Complaint] which are not alleged." *Arnold v. City of Tulsa, Oklahoma*, No. 09-CV-811-TCK-PJC, 2010 WL 3860647, at *3 (N.D. Okla. Sept. 30, 2010) (citation omitted).

It is not enough for the plaintiff to plead facts "merely consistent" with the defendant's liability – "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal* 556 U.S. 662, 678 (2009). Instead, a plaintiff must state enough facts to nudge his claims "across the line from conceivable to plausible[.]" *Twombly*, 550 U.S. at 570.

### a. Plaintiff's Fourth Amendment Claim

Defendants Motion to Dismiss argues that Plaintiff's Fourth Amendment claim fails as a matter of law. (Docket No. 14 at 8). Plaintiff alleges that Defendants "violated the constitutional

rights of the minor child and Plaintiff as secured by the Fourth Amendment…" (Docket No. 13 at 11). The Fourth Amendment guarantees:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV. As the Defendants correctly argue, Plaintiff's complaint fails to identify where or when she was "searched or "seized." (Docket No. 14 at 8). Plaintiff explains in her Response to Defendants' Motion to Dismiss that her Fourth Amendment claims relate to January 7, 2023, when she allowed Defendant McMillen into her house and allowed Defendant to remove the minor child based on Defendant McMillen's claim that she had a court order to do so. (Docket No. 17 at 6). Plaintiff argues that she would not have allowed Defendant McMillen to take the minor child, but for the belief that Defendant McMillen had the authority to do so. *Id.* at 6-7.

Plaintiff's Fourth Amendment claim fails for two reasons. First, Plaintiff Buchanan may not assert a derivative or vicarious claim for the minor child's Fourth Amendment injuries. "It is well established that 'Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted.'" *J.B. v. Washington Cnty.*, 127 F.3d 919, 928 (10th Cir. 1997) (quoting *Alderman v. United States*, 394 U.S. 165, 174 (1969)). Second, according to the Exhibit 2 of Defendants' Motion to Dismiss, Defendant McMillen *did* have an order from the Court allowing her to remove the minor child from Plaintiff's home, because Plaintiff was only permitted supervised visitation for one hour per week.[1] (Docket No. 14 at

---

[1] The Court may consider the Emergency Temporary Custody Order attached to Defendants' Motion to Dismiss without converting its review from dismissal to summary judgment because Claimant referred to it in her complaint and it is central to her claims. *See GFF Corp. v. Associated Wholesale Grocers, Inc.,* 130 F.3d 1381, 1384 (10th Cir. 1997) ("[I]f a plaintiff does not incorporate by reference or attach a documents to its complaint, but the documents is referred to in the complaint and is central to plaintiff's claim, a defendant may submit an indisputably authentic copy to the court to be considered on a motion to dismiss.").

Exhibit 2). This is further evidenced by Plaintiff's statement of facts wherein she agrees she was "withholding the minor with a court approved supervisor present[,]" which led to OKDHS investigating Plaintiff once again. (Docket No. 13 at 6). Under Oklahoma Statutes[2] parents' interest in the care, custody and management of their children are protected through "procedures designed to ensure both that parents whose children are removed receive notice and an 'opportunity to be heard at a meaningful time and in a meaningful manner.'" *Hollingsworth v. Hill*, 110 F.3d 733, 739 (10th Cir. 1997) (quoting *Matthews v. Eldridge,* 424 U.S. 319, 333 (1967)). The Emergency Temporary Custody Order put in place on June 6, 2022, following a hearing on the minor child's father's application is one of these procedures. Therefore, Plaintiff's claim that Defendant McMillen was not justified to remove the minor child from her home is not plausible. Defendants have presented evidence which directly contradicts Plaintiff's allegations. Accordingly, Defendants' Motion to Dismiss Plaintiff's Fourth Amendment claim is GRANTED.

      **b.**    **Plaintiff's Fourteenth Amendment Claim**

Plaintiff alleges that Defendants intended and continue to intend to deprive Plaintiff of her protected relationship with her minor child in violation of the Due Process Clause of the Fourteenth Amendment, which protects the fundamental rights of parents to make decisions concerning the care, custody, and control of their children and to associate with their children. (Docket No. 13 at 11). Defendants argue that Plaintiff failed to reach the high threshold necessary to state such a substantive due process claim. (Docket No. 14 at 9). Both parties agree the legal test to determine whether executive actions violated a person's rights to familial association is contained in *Halley v. Huckaby*, 902 F.3d 1136 (10th Cir. 2018).

---

[2] Okla. Stat. tit. 10 §§ 1101-1149; Okla. Stat. tit. §§ 60-60.7

A plaintiff who alleges that an official interfered with the right to familial association in some way must show: (1) the officials intended to deprive the plaintiff of a protected relationship with a family member, and (2) the officials' intrusion into the relationship was not warranted by state interests in the health and safety of the family member. *Halley v. Huckaby*, 902 F.3d 1136, 1154 (10th Cir. 2018). The facts alleged by the plaintiff on these points must meet the shocks-the-conscience standard. *Id.* at 1154-55. "Conduct that shocks the judicial conscience" is "deliberate government action that is arbitrary and unrestrained by the established principles of private right and distributive justice." *Hernandez v. Ridley*, 734 F.3d 1254, 1261 (10th Cir. 2013) (quotation omitted).

In this case, Plaintiff's Amended Complaint alleges that Defendants received an investigation and referral against Plaintiff on June 1, 2022. (Docket No. 13 at 3). The following day, Defendants conducted a forensic interview of the minor child, which Plaintiff was not allowed to attend, to pick the minor child up from, or given any information about. *Id.* at 3-4. Plaintiff alleges that it was later on before she was informed of the Emergency Custody Order that was granted in her divorce. *Id.* at 5. Defendants in their Motion to Dismiss attach the Emergency Custody Order that was entered on June 2, 2022, granting emergency temporary custody to the minor child's father with no visitation for Plaintiff pending a hearing on June 6, 2022. (Docket No. 14 at Exhibit 1). This document not only explains why Plaintiff was not given the opportunity to see the minor child following the forensic interview, but also undermines Plaintiff's argument that *Defendants* intended to deprive Plaintiff of a protected relationship with her minor child, as required under *Halley.*

"The plaintiff must show that the officials unduly burdened or created an unwarranted intrusion on the plaintiff's right to familial association." *Halley,* 902 F.3d at 1155 (quotation

7

omitted). Here, Plaintiff does not provide any facts to show that the Defendants themselves acted with the intent to deprive the Plaintiff of her minor child, in fact, the record shows that the Carter County District Court Emergency Custody Order was the catalyst for Plaintiff's separation from the minor child. Furthermore, Plaintiff has not alleged facts to show that Defendants had any involvement in the entry of the emergency order, or that their actions were "arbitrary and unrestrained." *Hernandez,* 734 F.3d at 1261. Plaintiff fails to present sufficient facts to make a Fourteenth Amendment violation plausible, therefore Defendants' Motion to Dismiss Plaintiff's Fourteenth Amendment claim is GRANTED.

      **c.**      **Plaintiff's Conspiracy, Intentional Infliction of Emotional Distress, Libel and Slander, and Invasion of Privacy Claims**

In order to establish a claim for conspiracy under § 1983, the Plaintiff must plead specific facts that tend to show "agreement and concerted action among the defendants" to violate the Plaintiff's civil rights. *Durre v. Dempsey*, 869 F.2d 543, 545 (10th Cir. 1989). The allegations of conspiracy "must provide some factual basis to support the existence of the elements of a conspiracy: agreement and concerted action." *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th Cir. 1990). In this case, Plaintiff does not present any factual allegations showing agreement and concerted action among the Defendants. Plaintiff's Amended Petition contains nothing more than conclusory allegations as to the existence of a conspiracy between the Defendants, which are insufficient to overcome a Motion to Dismiss. *See, e.g., Lindsey v. Thompson*, 550 F. Supp. 2d 1285, 1288 (E.D. Okla. 2006), aff'd sub nom. *Lindsey v. Thomson*, 275 F. App'x 744 (10th Cir. 2007). Likewise, Plaintiff's allegations of intentional infliction of emotional distress, libel and slander, and invasion of privacy are similarly devoid of anything other than conclusory statements that they occurred, with absolutely no factual basis for support. (Docket No. 13 at 12-11).

Accordingly, Defendants' Motion to Dismiss Plaintiff's Conspiracy, Intentional Infliction of Emotional Distress, Libel and Slander, and Invasion of Privacy claims is GRANTED.

### d.  Defendants' Qualified Immunity

Defendants argue that they are entitled to qualified immunity. (Docket No. 14 at 10-12). Qualified immunity "protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). This doctrine is intended "to shield officials from harassment, distraction, and liability when they perform their duties reasonably," while also ensuring that officials who "exercise power irresponsibly" are held accountable. *Id.* "'[Q]ualified immunity protects all but the plainly incompetent or those who knowingly violate the law.'" *Halley,* 902 F.3d at 1144 (quoting *Mullenix v. Luna,* 577 U.S. 7, 12 (2015)). As noted above, Plaintiff has failed to allege sufficient facts that would plausibly establish a cause of action for constitutional violations. When the defense of qualified immunity is raised, it is the plaintiff's burden to convince the court that defendants' actions violated clearly established constitutional or statutory rights of which a reasonable person would have known. *See Hidahl v. Gilpin Cnty. Dep't of Soc. Servs.*, 938 F.2d 1150, 1155 (10th Cir. 1991). Plaintiff has failed to allege sufficient facts to establish that Defendants violated a constitutional right or in anyway acted unreasonably in their positions. Accordingly, Defendants are entitled to qualified immunity and Defendants' Motion to Dismiss is GRANTED.

### e.  Plaintiff failed to comply with the Oklahoma Governmental Tort Claims Act

Defendants and OKDHS argue in their Motions to Dismiss that they are immune from tort liability for Plaintiff's failure to comply with the Governmental Tort Claims Act ("GTCA"), 51

Okla. Stat. § 151, et seq. (Docket No. 14 at 12-14 and Docket No. 15 at 4-6). The GTCA is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort. *Fuller v. Odom*, 741 P.2d 449, 451 (Okla. 1987); *see also* Okla. Stat. tit. 51, §§ 152(14), 153. In the GTCA, Okla. Stat. tit. 51, § 152.1(A), the legislature adopted and reaffirmed sovereign immunity for the State, its political subdivisions, and all employees acting within the scope of their employment. This immunity is subject to a limited waiver to the extent and the manner specifically provided for by the provisions of the other sections of the GTCA. Okla. Stat. tit. 51, § 152.1(B); *see also Salazar v. City of Okla. City*, 976 P.2d 1056, 1066 (Okla. 1999).

To successfully bring a tort claim against OKDHS or its employees, an individual must comply with the notice and commencement provisions of the GTCA. Okla. Stat. tit. 51 §§ 153, 156. Notice is a central component of the GTCA. *See* Okla. Stat. tit. § 157(B) ("No action for any cause arising under this act . . . shall be maintained unless valid notice has been given[.]"); *Burghart v. Corrections Corp. of America*, 224 P.3d 1278, 1281 (Okla. 2009) (holding that the district court did not have jurisdiction over plaintiff's tort claim due to the failure to comply with the notice provisions of the GTCA). Compliance with the notice provision of the GTCA has "been interpreted to be either a condition precedent to suit against a political subdivision, or a jurisdictional prerequisite to judicial intervention." *Gurley v. Memorial Hospital of Guymon*, 770 P.2d 573, 576 (Okla. 1989).

Plaintiff argues that she is not asserting any state law claims against OKDHS or Defendant Shropshire in her official capacity and therefore the GTCA does not apply. (Docket No. 16 at 2). Despite this argument, Plaintiff's Amended Complaint seeks "damages against all Defendants for all claims." (Docket No. 13 at 13). Plaintiff's use of the word "all Defendants" in this request for

relief seemingly includes OKDHS and Defendant Shropshire in her official capacity, which would trigger the requirements under the GTCA. Damages for Plaintiff's tort claims cannot be awarded when Plaintiff fails to comply with the terms of the GTCA because, the "GTCA is the exclusive remedy by which an injured plaintiff may recover against an Oklahoma governmental entity in tort." *Fuller,* 741 P.2d at 451. Since Plaintiff has not complied with the GTCA in bringing a tort claim against OKDHS and Defendant Shropshire in her official capacity, OKDHS' Motion to Dismiss Plaintiff's tort claims is GRANTED.

As for the tort claims against the individual Defendants, Plaintiff argues in her Response to Defendants' Motions to Dismiss that the GTCA is not applicable here since the individual Defendants were not acting within the scope of their employment, therefore no notice was required. (Docket No. 17 at 11). However, Plaintiff fails to allege sufficient facts to show that the individual Defendants were acting outside the scope of their employment. To the contrary, Plaintiff's Amended Complaint indicates that the Defendants' *only* involvement in this case was through their employment with OKDHS. (See Docket No. 13 at 3-7). Plaintiff alleges that Defendants Rosenblum and Wollaston "went outside their scope of employment" while investigating the bruising on the minor child by labeling the type of abuse being investigated as "failure to obtain psychiatric and medical attention." *Id.* at 5. While it is clear Plaintiff does not believe the Defendants properly performed their roles, there is nothing alleged, other than Plaintiff's conclusory statements, that it was outside the scope of their employment. Course and scope of employment is a question of whether one was "engaging in work assigned," "doing what was proper, necessary, and usual to accomplish the work assigned," or "doing that which was customary within the particular trade or business." *Perry v. City of Norman*, 341 P.3d 689, 692 (Okla. 2014). As Defendants correctly argue, Plaintiff provides no facts that would tend to show

Defendants were not engaging in their assigned work or doing what is customary within their trade. (Docket No. 14 at 13).

Plaintiff further alleges that Defendants St. Clair and Rosenblum acted intentionally and willfully outside of the scope of their employment (Docket No. 13 at 5); however, Plaintiff fails to present factual allegations that would support this statement. Accordingly, the GTCA would apply and under the GTCA, Defendants would be immune from suit. *See* 51 Okla. Stat. §153(c) ("In no instance in any such action shall an employee of the state or of a political subdivision of the state acting within the scope of employment be named as defendant.").[3]

### f.  Plaintiff's claim for Injunctive Relief fail

Plaintiff seeks injunctive relief against OKDHS and its employees for their implementation and enforcement of internal policies, procedures, and/or customs in violation of the "Federal Constitution" (Docket No. 13 at 9 and 13) and against OKDHS, requiring it to "create an appeals process that encompasses all due process and constitutional rights." *Id.* at 13. OKDHS argues in its Motion to Dismiss that "Plaintiff fails to point to any violation of law or her rights attendant to DHS' investigations of child abuse concerning her child or the appeals process." (Docket No. 15 at 9). The Court agrees. Under Oklahoma Law:

> [a] party requesting a permanent injunction bears the burden of showing: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.

*Fisher v. Oklahoma Health Care Auth.*, 335 F.3d 1175, 1180 (10th Cir. 2003) (citing *Fed. Lands Legal Consortium ex rel. Robart Estate v. United States*, 195 F.3d 1190, 1194 (10th Cir.1999);

---

[3] Even *in arguendo* if Plaintiff alleged sufficient facts that Defendants were acting outside the scope of their employment so as not to trigger the GTCA, Plaintiff clearly fails to allege sufficient facts other than conclusory statements to support her tort claims against the Defendants.

*Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 546 n. 12 (1987)). As explained above, Plaintiff has failed to present sufficient facts to make her constitutional violations plausible and has failed to allege sufficient facts to make her state tort claims plausible. As such, the first element is not satisfied. Moreover, Plaintiff has also failed to provide any facts that would show she will suffer irreparable harm should the injunction not be granted. Plaintiff provides no factual statements that she continues to be affected by OKDHS in a way that would irreparably harm her and her familial association. In fact, from the documents provided by the individual Defendants in their Motion to Dismiss, it seems that Plaintiff has agreed to a custody agreement within her divorce decree which allows her shared custody of the minor child. (Docket No. 14 at Exhibit 3). The third and fourth element required for injunctive relief are likewise lacking from Plaintiff's Amended Complaint. Plaintiff presents no factual allegations that, taken as true, shows the threatened injury outweighs the harm and injunction may cause, or that the injunction will not adversely affect the public interest. Accordingly, Plaintiff fails present sufficient facts to make her claim for injunctive relief plausible, therefore OKDHS's Motion to Dismiss is GRANTED.

For the reasons set forth herein, IT IS THEREFORE ORDERED that Defendants Missy St. Clair, Charlie Rosenblum, Matthew Wollaston, and Hali McMillen's and Defendants Oklahoma Department of Human Services and Deborah Shropshire in her official capacity's Motions to Dismiss (Docket Nos. 14 and 15) are hereby **GRANTED**.

IT IS SO ORDERED this 29th day of March, 2024.

_____
D. Edward Snow
United States Magistrate Judge